IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


In re NCAA Student-Athlete       )
Name and Likeness Licensing      )
Litigation *for the Northern*    )       1:11MC63
*District of California*         )


## MEMORANDUM OPINION AND ORDER

The instant matter comes before the Court for disposition of Plaintiffs' Motion to Compel Non-Party Atlantic Coast Conference to Produce Documents in Response to Subpoena Duces Tecum (Docket Entry 1). For the reasons that follow, the instant Motion will be granted in part and denied in part.

### Background

The action underlying the instant Motion to Compel is pending in the United States District Court for the Northern District of California. (See Docket Entry 3 at 2.) Plaintiffs, consisting of former Division I college basketball and football players, are pursuing claims on behalf of themselves and a class of all others similarly situated against Defendants National Collegiate Athletic Association ("NCAA"), Collegiate Licensing Company ("CLC"), and Electronic Arts Inc. ("EA") on the grounds that "the NCAA, its member schools and conferences, and various co-conspirators have violated the federal antitrust laws by conspiring to foreclose Plaintiffs and class members from receiving compensation in connection with the commercial exploitation of their names, images,

and/or likenesses following their college playing days." (Id. at 2-3.)

During the course of merits discovery, Plaintiffs served subpoenas on various nonparties, including the Atlantic Coast Conference (the "ACC"). (See id. at 3.) The original subpoena served on the ACC requested thirty-five categories of documents. (See Docket Entry 3-15.) The ACC objected to that subpoena on the grounds that "it [was] onerous, overly broad, unduly burdensome, and without limitation as to time or scope in violation of Rules 26 and 45 of the Federal Rules of Civil Procedure." (Docket Entry 3-16 at 2.) As a result of subsequent discussions between Plaintiffs and the ACC, Plaintiffs narrowed the thirty-five categories in their original subpoena to eleven. (See Docket Entry 3-17.) Contending that the ACC nonetheless has failed to produce a single responsive document, Plaintiffs now move this Court to "enter an order compelling non-party [the ACC] to produce all documents responsive to Plaintiffs' properly served subpoena *duces tecum*." (Docket Entry 1 at 1.) Plaintiffs also seek an Order of Contempt "obligating the ACC to pay Plaintiffs' expenses incurred in making this [M]otion, including attorneys' fees, pursuant to Fed. R. Civ. P. 45(e), 37(a)(5), and 37(c)(1)." (Docket Entry 3 at 2.)

Of note, Plaintiffs served a nearly identical subpoena on the Big Ten Conference (the "Big Ten"), also consisting of eleven categories of requested documents. (See Docket Entry 12-1.) Like

the ACC, the Big Ten objected to Plaintiffs' subpoena.  (See id.)
Plaintiffs brought a Motion to Compel in the United States District
Court for the North District of California (the "Big Ten Motion to
Compel").  (See id.)  That court denied said Motion and found "that
although [Plaintiffs'] document requests call for some documents
relevant to the claims or defenses in this action, their
substantially overly broad scope would subject the nonparties to
significant expense and undue burden if the nonparties were
compelled to respond to them in their current form."  (Id. at 2.)
In making this determination, the court noted that "the time-frame
for the documents requested is overly broad and not tailored to
discover relevant documents."  (Id. at 7.)  The court proceeded to
provide specific reasons for denying each of the Requests.  (See
id. at 8-15.)  Finally, the court held that "sanctions against
[Plaintiffs] are appropriate under Rule 45, as [Plaintiffs] failed
to take reasonable steps to avoid imposing an undue burden on the
nonparties."  (Id. at 16.)[1]

With this information in mind, the undersigned turns to an analysis of each of the eleven categories in Plaintiffs' narrowed request.

---

[1] Plaintiffs objected to the above-referenced order, but it was upheld.  (See Docket Entry 15-1.)

<u>Standard</u>

Federal Rule of Civil Procedure 45 governs subpoenas issued to nonparties and permits the same scope of discovery as provided for under Federal Rule of Civil Procedure 26. See <u>Kinetic Concepts, Inc. v. ConvaTec Inc.</u>, 268 F.R.D. 226, 240 (M.D.N.C. 2010) (citing Fed. R. Civ. P. 26 advisory committee's notes, 1991 Amendment, Subdivision (a)). Rule 26 allows for the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>

Moreover, the Court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

Accordingly, when conducting an analysis under Rule 45, the Court "is required to apply the balancing standards: relevance,

need, confidentiality and harm. Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Insulate Am. v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005).

## Discussion

As an initial matter, the Court notes that the email sent by Plaintiffs narrowing their subpoena request from thirty-five to eleven categories states: "The time frame for these document requests is from January 1, 2002 to the present, unless otherwise indicated below." (Docket Entry 3-17 at 1.) This Court agrees with the court for the Northern District of California that "[P]laintiffs have provided no sufficient justification for requesting documents that cover a ten-[]year period" (Docket Entry 12-1 at 7). Such a broad time period weighs against granting the instant Motion, as further discussed below where applicable in the analysis of each of the eleven category requests.

### Request No. 1

> 1. Any handbooks and/or manuals relating to participation in college athletics, including athletic codes of conduct.

The ACC has agreed to provide copies of its conference manuals for the last two years. (See Docket Entry 7 at 4-5.) Plaintiffs, however, seek all handbooks and manuals from 2002 forward, and contend that "[t]hese [m]anuals contain the rules and regulations

-5-

that govern student-athletes' participation in ACC athletics, including rules relating to amateurism and compliance with NCAA rules." (Docket Entry 10 at 9.)

Because Plaintiffs have made some showing of relevance, the ACC has already produced manuals related to the two prior years and because the Court sees minimal burden in requiring the ACC to produce this discrete category of documents from 2002 forward, the Court will grant Plaintiffs' Motion with respect to Request No. 1.[2]

### Request Nos. 2, 3, 4 and 5

2. Any television or broadcast contracts affecting or concerning men's Division I basketball or Division I football.

3. Any Licensing Agreements with major entities including, but not limited to, Collegiate Images, Thought Equity Motion, CLC, and Electronic Arts. Minor, local promotions with entities other than those described above need not be produced.

4. Any contracts with outside licensing entities. If the ACC has not sued any outside licensing entities, please produce all documents containing revenue information for products sold containing footage/photographs.

5. Any documents, including, but not limited to, reports relating to the Licensing Agreements described above.

---

[2] In the Big Ten Motion to Compel, the Big Ten contended the conference handbooks were publicly available, and the court for the Northern District of California denied Plaintiffs' Request No. 1 partly on the grounds that "it appears that [] [P]laintiffs have access to at least some responsive materials through a less burdensome source within the meaning of Rule 26(b)(2)(c)." (Docket Entry 12-1 at 8.) The ACC has made no similar showing of the availability of its handbooks or manuals through a less burdensome source in this case. (See Docket Entry 7.)

The ACC contends that Request No. 2 is irrelevant to the underlying action. (Docket Entry 7 at 5.) Specifically, the ACC notes: "The NCAA has its own television agreements, and neither it nor any other defendant was a party to the ACC's television agreements, was involved in the negotiation of the agreements, received copies of the agreements, was privy to the details of or had input into the agreements, had ever seen copies of the agreements, or received any revenues or other benefits from the agreements." (Id.)

With respect to Request Nos. 3, 4 and 5, the ACC states that "Plaintiffs' counsel advised counsel for the ACC that Plaintiffs are not seeking copies of any licensing agreements for the use of the ACC name, ACC logo/seal, or registered [ACC] trademarks or service marks, but instead are seeking copies of any licensing agreements for the use of any student-athlete names, likenesses, or images." (Docket Entry 7 at 9.) In this regard, the ACC contends:

> [T]he ACC has not had any licensing agreements of any nature with EA Sports or CLC for the use of student-athlete names, likenesses, or images. The ACC recently entered a licensing agreement with CLC, but only for the use of the ACC name, logo/seal, and registered [ACC] trademarks and service marks. It does not authorize the use of student-athlete names, likenesses, or images. Until the recent agreement with CLC, the ACC has had a single exclusive licensing agreements that has been <u>limited to</u> the use of the ACC and [ACC] trademarks and service marks. As such, there are no responsive documents to produce for these requests.

(Id. (underlining in original).)

-7-

Plaintiffs assert that "[t]he ACC is an alleged co-conspirator and a major force within the NCAA," and that "the broadcast and licensing agreements entered between the ACC and television networks and licensing entities convey rights to utilize student athletes' name [sic], image [sic], and likeness [sic], and are the mechanisms by which the illegal conspiracy is carried out." (Docket Entry 10 at 3.)

In this instance, the Court finds the resolution of this issue by the court in the Northern District of California instructive. In that action, the court found that "[t]he agreements responsive to th[ese] [R]equests are at least marginally relevant to the claims of [] [P]laintiffs, because they concern the for-profit use of the images, likenesses, or names of student-athletes in products or media, which, according to the operative complaint, include television contracts, rebroadcasts of classic games, DVD game and highlight film sales and rentals, on-demand streaming and sales of games and clips, and stock footage sales to corporate advertisers and others." (Docket Entry 12-1 at 10 (internal quotation marks and citation omitted).) However, the court also recognized that "the document requests . . . call for highly confidential commercial information from the nonparties and are not tailored to minimize the potential prejudice that the nonparties could suffer by releasing such information." (Id.)

-8-

Case 1:11-mc-00063-UA-LPA   Document 16   Filed 06/18/12   Page 8 of 18

Accordingly, the court designed a compromise requiring the Big Ten to produce "any television broadcast and licensing agreements to which [it] [is] [a party] concerning NCAA Division I football or basketball, as well as any nonprivileged documents concerning the negotiation of any contract provisions that mention the student-athletes' right of publicity, names, images, or likenesses." (Id. at 9.) The court expected such excerpts to contain "contract provisions that mention student-athletes' right of publicity, names, images, or likenesses, as well as identifying information concerning the parties to the agreements and whether the agreements relate to NCAA Division I football or basketball." (Id.) Morever, the Big Ten was to "provide a summary of the distribution rights conveyed by each agreement produced." (Id.)

This Court will order the same. As the documents sought are at least partially relevant to Plaintiffs' claims in the underlying action (sufficient to overcome the burden demonstrated by the ACC), the instant Motion will be granted in part with respect to these Requests in that the Court will order the ACC to produce documents responsive to said Requests in line with the compromise fashioned by the court for the Northern District of California.

Plaintiffs, however, have failed to provide the Court with any reason to doubt the ACC's assertion that it does not have documents responsive to Request Nos. 3, 4 and 5. If said assertion remains

true in light of the compromise ordered by the Court, the ACC need not take any further action with respect to those Requests.

### Request No. 6

>  6. Any specific documents relating to or addressing the question of the rights to continue to license, use, or sell all products containing images of former student athletes, including, but not limited to, any name, image, or likeness release or consent forms used or administered by the conference. (We do not want the signed Forms 08-3(a), only exemplars).

In its Response, the ACC has indicated that "counsel for the ACC has sought and received a voluntary production of exemplar forms from the ACC's member institutions and thus the ACC will produce copies of the exemplars that its member institutions voluntarily provided." (Docket Entry 7 at 10.) The ACC further notes that "Plaintiffs have indicated that this [production] will satisfy their Request No. 6." (Id.) As Plaintiffs have not addressed this Request further in their Reply (see Docket Entry 10), additional discussion of this item is unnecessary.

### Request Nos. 7, 10 and 11

>  7. Any documents relating to policies regarding copyright, ownership and/or licensing of products utilizing or incorporating the name, image, or likeness of Student Athletes, including, but not limited to, footage and photos.
>
>  10. Any documents relating to attendance at any trade association or industry association meeting where the rights in or ownership of Student Athletes' photos or footage was discussed, including, but not limited to, meetings of the (a) National Association of Collegiate Directors of Athletics; (b) International Collegiate Licensing Association; (c) National Association of

-10-

Collegiate Marketing Administrators; and (d) College
Athletic Business Management Association.

11. Documents generated within the last two years and
that relate to potential changes to the collegiate model,
competitive balance issues, commercialism debates
including related to NCAA Legislative Proposal 2010-26,
or increased player benefits such as covering the full
cost of attendance. These documents should include
materials pertaining to NCAA President Emmert's August
"Presidential Retreat." *See, e.g.,*
http://www.ncaa.com/news/ncaa/2011-07-19/ga-emmert-
presidential-retreat.

With respect to Request Nos. 7, 10 and 11, the ACC again states that it does not have documents responsive to those Requests. (See Docket Entry 7 at 10 ("The ACC is unaware of any documents responsive to this Request. Nonetheless, the ACC has agreed to produce its manual, which includes, among other things, its Constitution, Bylaws and various policies."); id. at 12 ("Counsel for the ACC agreed to investigate with the ACC whether any of its staff had received documents requested at trade/industry association meetings of the type listed. After further investigation, the ACC does not possess any documents responsive to this request."); id. at 13 ("The ACC does not possess any documents responsive to this Request other than the form legislation of Proposal 2010-26 which is available from the NCAA. The ACC, nonetheless, will produce information regarding the votes of its members that it conveyed regarding this legislative proposal.").)

In their Reply, Plaintiffs argue that "[i]t seems impossible that the ACC has no documents responsive to these requests.

-11-

Rather, this more likely reveals the insufficiency of the ACC's search for documents." (Docket Entry 10 at 9.) Plaintiffs go on to state: "For example, Plaintiffs have received productions from other conferences that include communications to which the ACC is a party that are responsive to Plaintiffs' request relating to policies and trade association meeting agendas at which the ACC was present and issues relating to the litigation were discussed." (Id. at 9 n.12.) Plaintiffs, however, have not provided the Court with the communications to which they refer. (See id.)

The Court is left without a sufficient basis to discredit the ACC's assertion that it lacks documents responsive to the Requests, and the Court cannot compel the ACC to produce something which it does not have. Moreover, the Court finds these Requests overly broad. Plaintiffs have failed to show that the relevance of these documents to the underlying action outweighs the burden on the ACC of producing responsive documents covering a ten-year span. Accordingly, the Court will deny the instant Motion with respect to Request Nos. 7, 10 and 11.

### Request No. 8

> 8. Documents relating to EA Sports games, including, but not limited to, any materials or information provided by the ACC to EA (footage, broadcasts, player bios and stats, consents or licenses from players) and information on payments by EA to the ACC.

As to this Request, the ACC stated: "[T]he ACC has not had any agreements with EA Sports. Additionally, the ACC does not provide

-12-

material to EA Sports and has not received payments from EA Sports. On information and belief, if EA Sports has requested or received any information from any individual school, such as a game program or press guide, that is a request that would have been handled directly between EA Sports and the individual school." (Docket Entry 7 at 11.) Plaintiffs' Reply asserts only that "[d]ocuments related to Defendant EA Sports are central to the parties' claims and defenses. . . . In addition to materials provided to or received from EA, several conferences have also produced internal documents that discuss the use of student-athlete name, image, and likeness in EA Games, as well as financial reports reflecting payments related to EA Games." (Docket Entry 10 at 10.)

Again, the Court lacks a basis to reject the ACC's assertion that it does not possess documents responsive to this Request. Moreover, as the court in the Northern District of California found regarding an analogous request, the instant Request "is overly broad, and . . . [Plaintiffs] have not articulated sufficient limitations based on the discovery they have obtained from other sources to reduce the burden on the nonparties of searching for responsive documents." (Docket Entry 12-1 at 13.) Accordingly, the undersigned will deny the instant Motion with respect to Request No. 8.

### Request No. 9

> 9. Any documents referencing or referring to the present litigation, also known as the *O'Bannon* and/or *Keller*

litigation, including, but not limited to, documents relating to or referring to Plaintiffs' subpoenas served on third parties, including the ACC.

In connection with this Request, the ACC provided as follows: "The ACC has asserted a common interest privilege with the television/broadcast entities with which it had contracts and a common interest privilege/joint defense agreement with the NCAA and other conferences to the extent that the various conferences are member entities of the NCAA and to the extent that, during the pendency of the non-party subpoenas, Plaintiffs have accused the conferences of being unnamed co-conspirators with the NCAA." (Docket Entry 7 at 12.) Moreover, the ACC "objected to providing a detailed privilege log specifying every communication between defense counsel as such privileged communications regarding the [l]itigation or regarding the subpoenas at issue are, at best, of remote relevance to Plaintiffs' claims in the [l]itigation and the preparation of a detailed privilege log . . . would be unduly burdensome under Rule 45 and does not seem appropriate under the circumstances." (Id.)

Although the ACC provided a "summary log," Plaintiffs assert that they "are unable to determine from this deficient log whether the common interest exception to attorney-client privilege applies" (Docket Entry 10 at 10) and contend that "[a]ny documents withheld on the basis of a supposed-privilege must be adequately identified in a privilege log, which sets forth 'every responsive document

withheld, the specific privilege it contends applies, and a description of the documents, communications, or tangible things not produced or disclosed to Plaintiff[s]'" (id. at 11 (quoting Miller v. Lincoln Fin. Grp., No. 1:10cv283, 2011 WL 4595803, at *2 (W.D.N.C. Oct. 3, 2011) (unpublished))).

This issue was addressed in the Northern District of California court's ruling on the Big Ten Motion to Compel. In that matter, the Big Ten claimed "that it ha[d] no nonprivileged documents responsive to this [R]equest and that it should not be required to create a privilege log because the privileged communications are protected by the joint defense privilege or common interest rule." (Docket Entry 12-1 at 14.) The court determined that "this document [R]equest is overly broad and that [] [P]laintiffs have failed to show that the documents responsive to it are relevant to the claims or defenses in this action." (Id.) The undersigned finds the same. Compelling nonparty the ACC to produce a full privilege log under the facts of this action would be unduly burdensome. Moreover, Plaintiffs have failed to show that the relevance of the documents, or need, would outweigh that burden. Accordingly, the Court will deny the instant Motion with respect to Request No. 9.

## Sanctions

Plaintiffs move for an Order of Contempt "obligating the ACC to pay Plaintiffs' expenses incurred in making this [M]otion,

-15-

including attorneys' fees, pursuant to Fed. R. Civ. P. 45(e), 37(a)(5), and 37(c)(1)." (Docket Entry 3 at 1.) Initially, the Court notes that Rule 37 does not apply in this situation. Of the provisions of Rule 37 cited by Plaintiffs, Rule 37(a)(5) mandates that the Court require a party or deponent whose conduct necessitated a motion to compel to pay the movant's reasonable expenses and Rule 37(c)(1) addresses the repercussions when a party fails to provide information or identify a witness. Neither addresses the failure of a nonparty to properly comply with a subpoena. In other words, "Rule 37 does not authorize an award of expenses for a motion to compel nonparties to produce documents. . . . The only authority for the imposition of sanctions against a nonparty for failure to comply with a subpoena is Rule 45(e)." Warkentin v. Federated Life Ins. Co., No. 1:10cv0221 DLB, 2012 WL 113745, at *2 (E.D. Cal. Jan. 13, 2012) (unpublished) (internal citations omitted).

Rule 45(e) authorizes the Court to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Given the largely overbroad and unduly burdensome categories of documents requested by Plaintiffs, the ACC's status as a nonparty, and the ACC's attempts at reaching compromise, the Court finds no basis to hold the ACC in contempt.

-16-

Conclusion

The Court lacks any ground to reject the ACC's assertions that it does not have documents responsive to Request Nos. 3, 4, 5, 7, 8, 10 or 11 and, accordingly, the Court will not compel the ACC to comply with those Requests. With respect to Request No. 1, given the showing of relevance and the minimal burden on the ACC in complying in full, the Court will grant Plaintiffs' instant Motion. Furthermore, the Court finds the compromise adopted by the court in the Northern District of California with respect to Request No. 2 appropriate and will order the ACC to comply likewise. However, with respect to Request No. 9, the Court deems said Request overly broad and unduly burdensome and will deny Plaintiffs' instant Motion. No dispute appears to exist as to Request No. 6. Finally, the Court finds sanctions under Rule 37 unauthorized and contempt under Rule 45(e) inappropriate under the circumstances of this case.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Non-Party Atlantic Coast Conference to Produce Documents in Response to Subpoena Duces Tecum (Docket Entry 1) is **GRANTED IN PART** and **DENIED IN PART** in that the Court grants said Motion with respect to

Request Nos. 1 and 2 as set forth in the above Order, but denies it in all other respects.

                                                     <u>/s/ L. Patrick Auld</u>
                                                              **L. Patrick Auld**
                                           **United States Magistrate Judge**

June 18, 2012

-18-

Case 1:11-mc-00063-UA-LPA   Document 16   Filed 06/18/12   Page 18 of 18